__NOT FOR PUBLICATION__

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH STRICKLAND,<br><br>Defendant. | Case No. 2:21-cr-00311 (BRM)<br><br><br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are Defendant Kenneth Strickland's ("Defendant") Motions *In Limine* requesting: (I) the exclusion of evidence of or an adverse inference regarding drug sales captured by audio recordings of the undercover officer; (II) limiting the testimony of the United States of America's ("Government") expert witness on drug trafficking and conducting a Federal Rule of Evidence 104 ("Rule 104") hearing regarding the witness's potential testimony; (III) a Rule 104 hearing on the inclusion of recorded conversations where alleged prejudicial racial language is used, or, in the alternative, the redaction of this language from all such conversations; (IV) an order that the Government's witnesses not use Defendant's name in connection with the term "suspect" when testifying; (V) the barring of the Government or its witnesses from referring to Defendant's criminal history or prior incarceration; (VI) the barring of the Government from showing any witnesses photos of Defendant prior to an in-court identification of Defendant; (VII) the Court instruct the jury concerning the suggestiveness of any in-court identification of Defendant; (VIII) a Rule 104 hearing on the proper bounds of the Government's cell site testimony; and (IX) the

authentication of participants in recorded phone calls to be played to the jury. (ECF No. 135.) The Government filed an opposition. (ECF No. 138.)

Also before the Court are the Government's Motions *In Limine* requesting: (I) the Court bar any reference to the consequences of a conviction; (II) to preclude Defendant from arguing or eliciting testimony on legal issues irrelevant to the jury's determination, or which address jury nullification; (III) to preclude Defendant from contesting the venue of federal court in this case; (IV) to preclude Defendant from introducing evidence of the Government's charging decisions regarding third parties; (V) the admission of two of Defendant's prior felony convictions should Defendant decide to testify at trial; (VI) to preclude the Defendant from impeaching the Government's cooperating witness using prior convictions outside of the ten-year period of Federal Rule of Evidence ("FRE") 609(b); (VII) to preclude the expert testimony of Defendant's expert Dr. Caren Rotello; (VIII) to admit statements made by Defendant's co-conspirators in furtherance of the conspiracy; and (IX) to declare as admissible certain records purporting to be self-authenticating in advance of trial. (ECF No. 136.) Defendant filed an opposition. (ECF No. 144.) Having reviewed the parties' submissions filed in connection with the motions *in limine* and having held oral argument on May 17, 2024, and incorporating and considering those arguments herein, for the reasons set forth below, having decided the motions on the record to be supplemented by this Opinion, and having entered an Amended Order on May 23, 2024 (ECF No. 148), on the record, and for good cause having been shown, Defendant's Motions *In Limine* (ECF No. 135) are **GRANTED IN PART**, **DENIED IN PART**, and **RESERVED IN PART**, and the Government's Motions *In Limine* (ECF No. 136) are **GRANTED IN PART, DENIED IN PART**, and **RESERVED IN PART**.

I.    BACKGROUND

A.    Factual Background

The superseding indictment ("Indictment") of January 11, 2024 charges Defendant with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances (Count 1) and Distribution and Possession with Intent to Distribute Fentanyl (Counts 2–6). (ECF No. 128 at 1–2.) The Indictment is based on events from November 2019 to May 2020. (*Id.*)

The Indictment stems from a law enforcement investigation into an alleged drug trafficking organization ("DTO") operating in New York, New Jersey, and Pennsylvania, among other states. (ECF No. 1 at 3.) Defendant allegedly worked for suppliers in the DTO to distribute large quantities of heroin and fentanyl. (*Id.*) Beginning in November 2019, undercover law enforcement officers began making controlled purchases of suspected heroin from Defendant. (ECF No. 88 at 1–2.) Defendant purportedly organized narcotics deliveries between himself and the suppliers using a cell phone, including with the alleged supplier Louis Perez ("Perez"). (*Id.* at 2.) On March 30, 2020, the Court granted the Government's application to intercept wire and electronic communications from Defendant's phone. (*Id.*) The Government then allegedly intercepted communication exchanges between Defendant and Perez, including a communication on April 10, 2020 where Perez allegedly agreed to sell Defendant narcotics. (*Id.*) The Government eventually surveilled a meeting between Perez and Defendant on April 18, 2020, where Defendant allegedly walked with Perez behind a building before walking back to his vehicle and placing something in the trunk. (*Id.* at 2–3.) Defendant was ultimately arrested on July 15, 2020.

B.    Procedural History

A criminal complaint was filed against Defendant and others on July 14, 2020. (ECF No. 1.) On the same day, a warrant was issued for Defendant's arrest. (ECF No. 5.) On July 15, 2020,

the Court issued an order of detention remanding Defendant to federal custody with the right to make a bail application at a later time. (ECF No. 17.) An indictment was issued on April 14, 2021. (ECF No. 50.) Defendant was arraigned on April 26, 2021, where he pled Not Guilty to all counts in the indictment. (ECF No. 51.) On October 14, 2022, Defendant filed an Omnibus Motion requesting the dismissal of the indictment, evidentiary disclosures by the Government, and the suppression of certain wiretap recordings. (ECF No. 83.) On February 27, 2023, the Court granted in part, and denied in part, Defendant's Omnibus Motion. (ECF No. 106.) The Court issued a further Opinion on the denial of Defendant's motion to suppress the wiretap evidence on November 28, 2023. (ECF No. 121.) A superseding indictment was filed on January 11, 2024. (ECF No. 128.) Defendant was arraigned on January 17, 2024. (ECF No. 129.) Defendant and the Government each filed their respective motions *in limine* on April 2, 2024. (ECF Nos. 135, 136.) The Government filed its opposition to Defendant's motions *in limine* on April 11, 2024 (ECF No. 138), and Defendant filed his opposition to the Government's motions *in limine* on April 26, 2024 (ECF No. 144). The Court held oral argument for these motions on May 17, 2024. (ECF Nos. 145, 146.)

## II.   LEGAL STANDARD

### A.   Motions *In Limine*

District courts have "wide discretion in determining the admissibility of evidence under the Federal Rules." *United States v. Abel*, 469 U.S. 45, 54 (1984). "Unlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). The Federal Rules of Evidence embody a "strong and undeniable preference for admitting any evidence

4

having some potential for assisting the trier of fact." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997), *as amended* (Dec. 12, 1997) (citation omitted). "The movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded." *Supernus Pharms., Inc. v. Ajanta Pharma Ltd.*, Civ. A. No. 21-14268, 2023 WL 4866348, at *1 (D.N.J. July 31, 2023) (quoting *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)).

A district court's ruling on a motion *in limine* is "subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's proffer. Indeed, even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41–42 (1984). "A trial court considering a motion *in limine* may reserve judgment until trial in order to place the motion in the appropriate factual context." *Supernus Pharms.*, 2023 WL 4866348, at *2 (quoting *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017)).

### B.    Motion to Exclude Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony in criminal proceedings. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Wright*, No. 19-230, 2022 WL 3928391, at *3–4 (E.D. Pa. Aug. 31, 2022); *United States v. Walker*, 657 F.3d 160, 177 n.14 (3d Cir. 2011). The Third Circuit has held "Rule 702 embodies three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017) (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)).

"[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted). Motions to exclude evidence are within a district court's discretion. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). However, Rule 702 "has a liberal policy of admissibility." *Kannankeril*, 128 F.3d at 806 (citation omitted). "If the expert meets liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility." *Id*. at 809.

As to qualification, this prong of the *Daubert* analysis "refers to the requirement that the witness possess specialized expertise." *MD Retail Corp. v. Guard Ins. Grp.*, Civ. A. No. 14-6589, 2017 WL 1164499, at *5 (D.N.J. Mar. 28, 2017). The Third Circuit has "interpreted Rule 702's qualification requirement liberally." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (citations omitted). In the Third Circuit, "a broad range of knowledge, skills, and training qualify an expert as such." *Paoli*, 35 F.3d at 741.

As to reliability, "[u]nder the Federal Rules of Evidence, it is the role of the trial judge to act as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Kannankeril*, 128 F.3d at 806 (citing *Daubert*, 509 U.S. at 589). "[T]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, *et alia*." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 155 (3d Cir. 1999). Along with "any other [factors] that are relevant," courts consider the following factors in determining the reliability of a proposed expert's testimony:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the

6

qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Paoli*, 35 F.3d at 742 n.8 (citing *Daubert*, 509 U.S. at 591; *U.S. v. Downing*, 753 F.2d at 1224 (3d Cir. 1985)); *Schneider ex rel Est. of Schneider*, 320 F.3d at 405; *McGarrigle v. Mercury Marine*, 838 F. Supp. 2d 282, 290 (D.N.J. 2011). The party offering the expert's testimony carries the burden to establish admissibility by a preponderance of the evidence. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999). Nonetheless, the "Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact." *Pineda*, 520 F.3d at 243 (citation omitted); *see also Kannankeril*, 128 F.3d at 806 (explaining Rule 702 "has a liberal policy of admissibility").

When an expert's testimony involves "technical knowledge," as opposed to "traditional scientific knowledge," the reliability analysis turns "not on the methodology of the expert testimony, but on the professional and personal experience of the witness." *Crowley v. Chait*, 322 F. Supp. 2d 530, 539 (D.N.J. 2004) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). There is an abundance of caselaw establishing an expert's methodology may be supported by "personal knowledge or experience." *Kumho*, 526 U.S. at 150; *see also United States v. Ford*, 481 F.3d 215, 219 (3d Cir. 2007); *Floorgraphics, Inc. v. News Am. Mktg. In-Store Servs., Inc.*, 546 F. Supp. 2d 155, 165 (D.N.J. 2008). Proffered nonscientific testimony involving technical knowledge may not be subjected to the higher standard and review of traditional scientific knowledge. *See id.*

Regarding the "fit" requirement, Rule 702 requires an "expert's scientific, technical, or other specialized knowledge . . . help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). In order to be helpful, expert testimony must be "sufficiently

tied to the facts of the case [such] that it will aid the [factfinder] in resolving a factual dispute." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (quotation marks and citation omitted). On the contrary, "expert evidence which does not relate to an issue in the case is not helpful." *Ford*, 481 F.3d at 219 n.6 (quotation marks and citation omitted). The Third Circuit has noted the standard for analyzing the fit of an expert's analysis is "not that high," but "higher than bare relevance." *Paoli*, 35 F.3d at 745.

## III.   DECISION

### A.   Defendant's Motion I

Defendant requests the Court exclude evidence regarding drug sales witnessed by the undercover officer, or, alternatively, an adverse inference regarding the content of audio recordings from undercover operations monitoring alleged drug purchases by Defendant. (ECF No. 135-2 at 1–4.) Defendant argues the Government's failure to preserve audio recordings capturing alleged conversation between Defendant and the undercover officer constitutes spoliation which prejudices Defendant's ability to defend himself. (*Id.* at 3.)

Here, Defendant has not made the requisite showing that the Government deliberately destroyed the evidence to prevent its use by Defendant. Where a party shows the wrongful destruction of evidence by a counterparty, a variety of sanctions may be appropriate, including the exclusion of evidence or a jury instruction on an adverse inference. *Victor v. Lawler*, Civ. A. No. 08-1374, 2011 WL 1884616, at *3 (M.D. Pa. May 18, 2011); *see also Landau v. Zong*, Civ. A. No. 15-1327, 2017 WL 6336630, at *4 (M.D. Pa. Dec. 12, 2017). Here, neither the exclusion of the evidence or an adverse inference are warranted, as Defendant has failed to show the Government wrongfully destroyed any evidence. In the Third Circuit, "no unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or

8

accidentally destroyed, or where the failure to produce it is otherwise properly accounted for." *United States v. Nelson*, 481 F. App'x 40, 42 (3d Cir. 2012) (quoting *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)). In this case, Defendant has failed to make any showing that the alleged audio recordings were destroyed at all, let alone that they were destroyed to prevent his use of them. (ECF No. 135-2 at 8 (referencing testimony indicating only that no audio recording existed, while making no reference to potential destruction of the evidence).) Although Defendant need not present direct evidence of malicious intent by the Government, he must at least present circumstantial evidence regarding factors such as "the timing of the destruction, whether there was selective preservation, and what preservation policies the party had in place."[1] *Nagy v. Outback Steakhouse*, Civ. A. No. 19-18277, 2024 WL 712156, at *5 (D.N.J. Feb. 21, 2024). Here, Defendant has not made any allegation regarding the Government's intent, the circumstances of the destruction, if any occurred, or the Government's preservation policies. Therefore, Defendant has failed to meet his burden to warrant any spoliation sanctions regarding the content of the audio recordings. *See Victor v. Lawler*, Civ. A. No. 08-1374, 2012 WL 1642603, at *7 (M.D. Pa. May 10, 2012) ("The party seeking spoliation sanctions must also prove a culpable state of mind."); *Nelson*, 481 F. App'x at 42 ("'[I]t must appear that there has been an actual suppression or withholding of the evidence.' However, 'no unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.'" (quoting *Brewer v. Quaker State Oil Refin. Corp.*, 72 F.3d 326, 334 (3d Cir. 1995))) *Nagy*, 2024 WL 712156, at *5

---

[1] To the extent Defendant argues gross negligence may ground spoliation sanctions, he relies on an outdated case decided before the Third Circuit clarified the spoliation intent standard. (ECF No. 135-2 at 2); *see Mosaid Tech. Inc. v. Samsung Elec. Co.*, 348 F. Supp. 2d 332, 337 (D.N.J. 2004) (noting that "the Third Circuit has yet to elaborate on what it meant when it stated that it 'must appear that there has been actual suppression'").

("Under Rule 37(e), spoliation warrants an adverse inference only if a party acted 'with the intent to deprive another party of the information's use in the litigation'—if, in other words, the spoliating party acted in bad faith.") (quoting *Bistrian v. Levi*, 448 F. Supp. 3d 454, 475 (E.D. Pa. 2020))).

Accordingly, Defendant's Motion I is **DENIED**.

## B.    Defendant's Motion II

Defendant requests the Government's expert witness on DTOs, David McNamara, be limited in his testimony to avoid opining on Defendant's alleged guilt, state of mind, or on topics which are within the jury's knowledge, and requests a Rule 104 hearing to preview the testimony to ensure it does not contain impermissible content. (ECF No. 135-2 at 5–7.)

Defendant's motion is proper to the extent it seeks to limit the expert's testimony regarding legal conclusions and non-expert subjects. However, the Court finds a Rule 104 hearing is unnecessary in this case. It is within a District Court's discretion to determine whether a Rule 104 hearing is necessary for an expert opinion. *See Murray v. Marina Dist. Dev. Co.*, 311 F. App'x 521, 523 (3d Cir. 2008); *Henry v. St. Croix Alumina, LLC*, 572 F. App'x 114, 119 (3d Cir. 2014). Here, a Rule 104 hearing is not necessary to preview Mr. McNamara's testimony, as the limitations Defendant seeks are well established and can be objected to at trial should they be violated. *See, e.g.*, *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 129 (3d Cir. 2020) (expert cannot testify to legal conclusion); *Suter v. Gen. Accident Ins. of Am.*, 424 F. Supp. 2d 781, 793 (D.N.J. 2006) (quoting *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988)) (noting expert witnesses may not offer opinions on the credibility of other witnesses); *United States v. Gibbs*, 190 F.3d 188, 212 (3d Cir. 1999) (expert testimony is to be excluded on topics for which the jury needs no "aid or illumination").

Accordingly, Defendant's Motion II is **GRANTED IN PART** as to Defendant's request to preclude Mr. McNamara from testifying at trial about Defendant's alleged guilt or state of mind, or on any topics within the jury's knowledge, and is **DENIED IN PART** as to Defendant's request for a Rule 104 hearing.

### C.      Defendant's Motion III

Defendant asks the Court to hold a Rule 104 hearing to determine if the probative value of phone communications containing the n-word outweigh the potential prejudice against Defendant stemming from his use of the word. (ECF No. 135-2 at 7–8.) Alternatively, Defendant asks the Government to fully redact the n-word from all recordings it intends to use at trial. (*Id.* at 8.)

The Court finds the redaction of the n-word in the calls unnecessary, as Defendant only uses the word once in the calls, the word is not used in a derogatory way, and jury *voir dire* may be used to ensure the jury would not be prejudiced by hearing the word. Courts only grant motions to redact racial epithets when they are concerned that the use of such epithets would lead to jury prejudice against the defendant, including a perception by jurors that the defendant is a racist. *See United States v. Giampa*, 904 F. Supp. 235, 296 (D.N.J. 1995) (noting the court had ordered the removal of all racial epithets "that were not descriptive in nature and alleged by the Government to be necessary to identify the person being referred to in the transcripts" based on defendants' argument that such removal was required "to insure the verdict rendered by the jury was based on a determination of their criminal culpability rather than whether they were racists"); *United States v. Price*, 13 F.3d 711, 720 (3d Cir. 1994) (refusing to redact transcript despite defendant using n-word to refer to rival gang, based on conclusion the jury was not prejudiced against defendant by use of the word). Here, there is little concern the jury would perceive Defendant to be a racist, both because he only utters the n-word once in the identified phone communications, and because the

11

n-word is not being used in a derogatory manner in the conversations. Moreover, to the extent there is any remaining concern the jury may be offended, distracted, or prejudiced by the language, the Court can minimize any prejudice to the Defendant through *voir dire* and/or cautionary instructions. *See United States v. Colbert*, No. 08-411, 2011 WL 3360112, at *12 (W.D. Pa. Aug. 3, 2011) (holding that "any potential prejudice that possibly could result from the use of the offensive language can be minimized through *voir dire* and cautionary instructions during trial"); *United States v. Whitaker*, 372 F. Supp. 154, 164 (M.D. Pa. 1974) ("Any prejudice which the offensive language might normally engender was minimized by the Court's inquiring of the jurors on *voir dire*."); *United States v. Hawkins*, 360 F. Supp. 2d 689, 691 (E.D. Pa. 2005) (denying motion to redact racial epithets from recorded conversations in part because the *voir dire* asked potential jurors if they would be offended by such language).

Accordingly, Defendant's Motion III is **DENIED**.

### D.     Defendant's Motion IV

Defendant requests the Court order the Government's witnesses not to associate Defendant's name with the name of the suspect identified in the investigative reports of the undercover officers. (ECF No. 135-2 at 8–9.)

To the extent the Government's witnesses wish to use Defendant's name in their testimony, Defendant has cited to no cases where the Court barred witnesses from naming the Defendant. The Court believes this is a novel request. Nonetheless, there appears to be analogous authority weighing against Defendant's motion. *Cf. United States v. Sarraga-Solana*, No. 04-144-6, 2005 WL 3701472, at *6 (D. Del. Oct. 6, 2005) (noting that it was not prejudicial to use defendant's name in call transcript even before the voices in the call had been authenticated, although this was not preferred); *Flowers v. Johnson*, Civ. A. No. 18-4757, 2023 WL 2207407, at *4 (D.N.J. Feb.

24, 2023) ("Flowers has not established that the trial judge's one-off reference to him as the principal who 'actually committed' the act rendered his trial fundamentally unfair because he has not demonstrated that the jury likely applied the court's instruction in a way that relieved the State of its burden.").

Alternatively, if Defendant is requesting the witnesses not associate Defendant's name with the term "suspect," this request is also denied, as referring to the Defendant as the "suspect" is not inherently prejudicial, given that it does not speak to the ultimate guilt of the Defendant and any potential prejudice can be cured by a Court instruction to the jury. Although there is limited precedent on the issue, courts have permitted the Government to refer to a defendant as the suspect, so long as such references are managed by jury instruction and the discretion of the Court at trial. *See United States v. Pilisuk*, No. 22-001, 2023 WL 576523, at *4 (W.D. Wa. Jan. 27, 2023) (denying defendant's motion to order counsel to refrain from using the terms "victim," "suspect," and "Defendant" when referring to participants in the case, whilst noting that a cautionary instruction may be given to the jury on use of the words, and the Court would otherwise monitor excessive use of the terms). In similar circumstances where the Government wished to refer to a party as a "victim," courts held this was permissible as the term "victim" was not inherently prejudicial, and appropriately reflects the Government's theory of the case. *See United States v. Lessier*, No. 18-281, 2019 WL 2489906, at *5 (D. Minn. June 15, 2019) ("The term "victim" is not inherently prejudicial. It is a term commonly used in the English language that does not by its nature connote guilt."); *United States v. Henery*, No. 14-00088, 2015 WL 409684, at *5 (D. Idaho Jan. 29, 2015) ("Referring to Lewis as the victim of the alleged crime is not prejudicial. The jury will understand, and will in fact be instructed, that this is a criminal case brought by the Government, but that the indictment and the charges are only an accusation.") The Court also finds

that referring to Defendant as the "suspect" is somewhat analogous to other cases where witnesses have been permitted to refer to a defendant using a street name associated with other criminal activity. *See, e.g., United States v. Diallo*, 461 F. App'x 27, 30 (2d Cir. 2012) (finding no error in admission of prior identification of defendant and government's reference to defendant using the street name "money"); *United States v. Scott*, No. 21-429, 2022 WL 1026725, at *2 (S.D.N.Y. Apr. 5, 2022) (finding the probative value of allowing witnesses to refer to defendant by his street name "Ill Will" was not outweighed by the risk of unfair prejudice, as "'Ill Will' is not necessarily 'suggestive of a criminal disposition'") (quoting *United States v. Alston*, No. 15-435, 2016 WL 5806790, at *8 (S.D.N.Y. Sep. 27, 2016)).

Accordingly, Defendant's Motion IV is **DENIED**.

### E.      Defendant's Motion V

Defendant asks the Court to prohibit the Government's witnesses from referring to Defendant's prior crimes, wrongs, or bad acts without first satisfying the test in Rule 404(b). (ECF No. 135-2 at 10–11.)

The Court finds such a prohibition at this stage is premature and unnecessary as Defendant's motion simply asks the Court to enforce the well-established law of Rule 404(b) without identifying the specific Rule 404(b) evidence the Government may or will bring, *See United States v. Rios*, No. 96-0540-06, 1997 WL 356476, at *1 (E.D. Pa. June 20, 1997) (denying motion to exclude Rule 404(b) evidence, allowing defendant to renew such motion when the Government informs defendant of its intention to use specific Rule 404(b) evidence); *United States v. Thomas*, No. 06-299, 2009 WL 4015420, at *13 (W.D. Pa. Nov. 19, 2009) (noting "it would be premature to rule on the potential admissibility of Rule 404(b) evidence until such evidence is considered in the context of trial"); *United States v. Flood*, No. 2004-36, 2007 WL 1314612, at

*13 (W.D. Pa. May 4, 2007) ("Consistent with the Court's practice, the Court will defer ruling on this Rule 404(b) matter until the time of trial when the Government seeks to admit such evidence.")

Accordingly, the Court **RESERVES** decision on Defendant's Motion V until such later time as may be necessary during trial.

## F.     Defendant's Motion VI

Defendant requests that "the Government should be precluded from showing any witnesses photos of [him] in preparation for their testimony" and "a Rule 104 hearing to review how the witnesses are being prepared for such in-court identifications." (ECF No. 135-2 at 11.)

Here, the Court is currently aware of only two potential in-court identifications, the first being from an undercover officer's multiple prior meetings with Defendant, and the second being from a cooperating witness who interacted with Defendant over the course of several months. (ECF No. 146 (May 17, 2024 Oral Argument Transcript ("Tr.")) at 22.) A witness may identify a defendant in court after having been shown a photograph if such identification is based on the witness's independent recollection of the defendant. *See United States v. Bhimani*, No. 17-324, 2020 WL 6263016, at *3 (M.D. Pa. Oct. 22, 2020) (finding witness's in-court identification of defendant, after having been shown a photograph of defendant during trial preparation, should not be struck as "[the witness] stated that she had face-to-face physical contact with [defendant] which occurred over the time she and Taylor worked out of Howard Johnson and, it was clear that her identification of [defendant] was based on her independent recollection of him"); *Fulton v. Gillis*, Civ. A. No. 04-3855, 2005 WL 928609, at *10 (E.D. Pa. Apr. 21, 2005) ("Even were the Court to find that the pre-trial identifications of Petitioner were unduly suggestive—which it does not—the mere fact that a pre-trial identification takes place in a suggestive forum is not enough reason to exclude an in-court identification, where the in-court identification had an adequate independent

basis."); *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972) (in determining whether an in-court identification was reliable despite suggestive pre-trial procedures, the court will examine "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated . . . at the confrontation . . . [and] the length of time between the crime and . . . confrontation"). Here, there is no concern that the undercover officer or cooperating witness's potential in-court identifications of Defendant would not be based on their independent recollection, since they met Defendant multiple times over the course of many months. (ECF No. 138 at 7.) Further, to the extent there is any concern that the undercover officer's, cooperating witness's (or any other witness's) in-court identification of Defendant is *not* based on their independent recollection, Defendant will have the opportunity to cross-examine those witnesses regarding their purported identification.

Accordingly, Defendant's Motion VI is **DENIED**.

### G.    **Defendant's Motion VII**

If the Court allows an in-court identification of the Defendant, Defendant requests the jury be instructed on the reliability of eye-witness identifications. (ECF No. 135-2 at 12.)

At oral argument, the Court asked the Government and Defendant to meet and confer to propose agreed jury instructions. (Tr. at 23.) *See United States v. Wecht*, No. 06-0026, 2008 WL 723315, at *1 (noting that the Court's "Final Jury Instructions were the culmination of a lengthy process, over at least an 18 month period, of 'meet and confers,' proposed jury instructions, counter instructions, objections, and numerous opinions and rulings of the Court interpreting and clarifying the statutes and legal principles involved in this case"); *O'Brien v. Middle E. F.*, Civ. A. No. 19-06078, 2021 WL 5873006, at *3 nn.7, 9 (E.D. Pa. July 28, 2021) (requesting parties meet and

16

confer regarding various jury instructions); *Bioverativ Therapeutics, Inc. v. Csl Behring, LLC*, Civ. A. No. 17-914, 2020 WL 4464616, at *1 (D. Del. Apr. 7, 2020) ("If Plaintiffs think a jury instruction during the relevant testimony would be helpful to the jury, they should submit such a jointly agreed instruction.")

Accordingly, the Court **RESERVES** decision on Defendant's Motion VII until such later time as may be necessary during trial.

### H.     Defendant's Motion VIII

Defendant asks for a Rule 104 hearing "to evaluate the 'ping data' testimony the [G]overnment intends to introduce and to determine whether such proposed testimony will be introduced as fact or expert testimony." (ECF No. 135-2 at 12–13.)

The Government has already indicated the "ping data" will be presented as expert testimony via Special Agent Matthew Caravella, who will "describe the methodology and assumptions used in drawing cell sector coverage and the methods by which cellular carriers determine the location of cellular devices using tower and sector information." (ECF No. 138 at 8.) Therefore, the Court finds a Rule 104 hearing regarding the "ping data" is unnecessary.

Accordingly, Defendant's Motion VIII is **DENIED**.

### I.     Defendant's Motion IX

Defendant requests the pretrial authentication of the identities of participants in certain phone recordings obtained through the Government's jailhouse sweep or wiretap. (ECF No. 135-2 at 13.)

The Court finds this request is proper as such authentication is required by Federal Rule of Evidence 901 and Defendant has specified the calls to be authenticated. Fed. R. Evid. 901(a)(b)(5–6); *United States v. Kaboni*, Nos. 07–550–03, 07–550–04, 07–550–05, 07–550–06, 2013 WL

420334, at *2 (E.D. Pa. Feb. 4, 2013) (noting that "the burden is on the government 'to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings'") (quoting *United States v. Starks*, 515 F.2d 112, 121 (3d Cir. 1975)); *United States v. Mondelice*, No. 21-1517, 2023 WL 2447444, at *2 (3d Cir. Mar. 10, 2023) ("'To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must' show 'that the item is what the proponent claims it is.'") (quoting Fed. R. Evid. 901(a)).

Accordingly, Defendant's Motion IX is **GRANTED**.

### J.   Government's Motion I

The Government requests an order barring Defendant from referring to the consequences of a conviction, including any potential term of incarceration, to the jury at trial. (ECF No. 136 at 5–7.)

It is well-established that a jury may not consider the consequences of its verdicts. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'") (quoting *Rogers v. United States*, 422 U.S. 35, 40 (1975)); *United States v. Blume*, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences."); *United States v. Young*, 403 F. Supp. 3d 1131, 1150 (D.N.M. 2019) ("In criminal cases, the United States and the defendant often work together to keep the jury ignorant of the ramifications of its determination of guilt.").

Accordingly, Government's Motion I is **GRANTED**.

### K.   Government's Motion II

The Government asks that Defendant be precluded from arguing or eliciting testimony regarding legal issues, such as the legality of evidence or searches, during trial, as such argument

is irrelevant to the factual questions given to the jury and may improperly prejudice the jury or encourage jury nullification. (ECF No. 136 at 7–9.)

It is well established that legal questions may not be argued before the jury. *See, e.g.*, *United States v. Baez*, No. 21-0507, 2023 WL 6364648, at *8–9 (D.D.C. Sept. 29, 2023) (precluding argument before the jury regarding First Amendment right to protest, and selective prosecution, as these arguments "would inappropriately shift the responsibility for making determinations of law from the Court to the jury" and potentially invite jury nullification); *United States v. Householder*, 645 F. Supp. 3d 844, 849–50 (S.D. Oh. 2022) (granting government's motion to exclude references to the discovery process or discovery disputes from argument before the jury, because "the constitutionality or propriety of evidence collection methods is a legal question for the Court"); *United States v. Segui*, No. 19-188, 2019 WL 8587291, at *14 (E.D.N.Y. Dec. 2, 2019) (granting government's motion to preclude argument regarding First Amendment before jury in part because defendant conceded such argument was a legal question for the court rather than the jury).

Accordingly, Government's Motion II is **GRANTED**.

## L.      Government's Motion III

The Government requests Defendant be barred from arguing before the jury that federal court is not the appropriate venue for the case, based on the original investigation of the case by the Middlesex County Prosecutor's Office, or because Defendant's crimes are not of sufficient severity to warrant a federal trial. (ECF No. 136 at 10–12.) Defendant did not object to this motion at oral argument and did not indicate any intention to argue that this Court is not the appropriate venue for trial. (Tr. at 35–36 (defense counsel stating, "I mean there's not [a] specific objection to this.").)

Accordingly, Government's Motion III is **GRANTED**.

### M.    Government's Motion IV

The Government requests Defendant be barred from arguing before the jury that he was unfairly singled out for prosecution based on the Government's charging decisions regarding third parties, as such evidence would be irrelevant to the charged offenses and introduce issues regarding prosecutorial discretion that are beyond the Court's competence. (ECF No. 136 at 13–15.)

The issue of selective prosecution is a legal question that should be presented before the Court, not the jury. *See Baez*, 2023 WL 6364648, at *8–9 (precluding argument before the jury regarding First Amendment right to protest, and selective prosecution, as these arguments "would inappropriately shift the responsibility for making determinations of law from the Court to the jury" and potentially invite jury nullification); *Householder*, 645 F. Supp. 3d at 849–50 (holding that "[b]ecause selective prosecution is a pretrial issue rather than a defense, the Court will not permit it to be asserted or suggested at trial"); *United States v. Napper*, 553 F. Supp. 231, 232 (E.D.N.Y. 1982) ("A selective prosecution claim is . . . a question of law properly determined only by the Court, and may not be argued before the fact-finders.").

Accordingly, Government's Motion IV is **GRANTED**.

### N.    Government's Motion V

The Government requests that the Court decide before trial that Defendant's prior convictions for drug possession in 2013, and drug distribution in 2014, be admitted in the event Defendant elects to testify in his own defense. (ECF No. 136 at 15–22.)

It is premature for the Court to determine the admissibility of prior convictions before Defendant indicates he intends to testify. *See United States v. Green*, No. 20-310, 2022 WL 2655780, at *3 (M.D. Pa. July 8, 2022) ("Here, the Government's motion with respect to the

introduction of [the defendant's] prior convictions under Rule 609 is premature where it is unknown whether [the defendant] will testify at trial."); *United States v. Wright*, 534 F. Supp. 3d 384, 404 (M.D. Pa. 2021) ("Here, the Government's motion with respect to Rule 609 is premature where it is unknown whether [the defendant] will testify at trial. Should the defendant choose to testify in his own defense, the Government's request to admit the prior convictions as impeachment evidence will be subject to timely renewal."); *United States v. Manning*, No. 14-326, 2015 WL 1310286, at *4 (D.N.J. Mar. 24, 2015) ("Without even knowing at this stage whether Mr. Manning intends to testify at trial, it is premature for the Court to determine the admissibility of Mr. Manning's prior convictions under Rule 609.")

Accordingly, the Court **RESERVES** decision on Government's Motion V until such later time as may be necessary during trial.

### O.    Government's Motion VI

The Government requests the Defendant be precluded from impeaching the Government's cooperating witness with convictions beyond the ten-year lookback period specified in Federal Rule of Evidence 609(b). (ECF No. 136 at 22–24.)

The Court finds the Government's request is proper to the extent that Defendant intends to use convictions beyond the ten-year lookback period to attack the cooperating witness's credibility. Convictions outside the ten-year lookback period should only be admitted in exceptional circumstances. *See Scarlett v. United States*, Nos. 10-809, 18-2802, 2021 WL 2809818, at *15 (E.D.N.Y. July 6, 2021) ("Importantly, under Rule 609(b), 'convictions over 10 years old [should] be admitted very rarely and only in exceptional circumstances,' as 'convictions over ten years old generally do not have much probative value.'" (quoting *United States v. Brown*, 606 F. Supp. 2d 306, 313 (E.D.N.Y. 2009))); *United States v. Sahakian*, No. 02-938, 2008 WL

11383346, at *10–11 (C.D. Ca. July 28, 2008) (granting defendant's motion to preclude the government's use of Rule 609(b) evidence despite government's argument that evidence should be admitted "in the interest of justice" to allow the jury an accurate impression of defendant's life, as the government presented no viable argument Rule 609(b) should be tolled or that the crime was of dishonesty); *United States v. Pettiford*, 238 F.R.D. 33, 39 (D.D.C. 2006) (noting that the general stance on Rule 609(b) evidence is one of inadmissibility). Here, Defendant has not pled such exceptional circumstances as he has indicated he intends to use such convictions for standard impeachment regarding the cooperator's "plea deal, cooperation agreement, and benefits reaped." (ECF No. 144 at 5.) Although Defendant claims he may legitimately use Rule 609(b) evidence to question the cooperating witness's motive for testifying, Defendant does not cite, and the Court cannot find, any case law showing this is a permissible use for impeaching witnesses using convictions beyond the permitted ten-year lookback period.

Accordingly, Government's Motion VI is **GRANTED**.

## P.    Government's Motion VII[2]

The Government asks that the expert testimony of Defendant's expert Dr. Caren Rotello[3] be precluded at trial due to its lack of relevance to the evidence the Government will present and because of its potential to unfairly prejudice the jury against the Government's case. (ECF No. 136 at 25–33.) Specifically, the Government argues Dr. Rotello's testimony is irrelevant under Federal Rule of Evidence 702 because it focuses on only one of the interactions between the undercover officer and Defendant and fails to address the other sixteen interactions which inform the officer's

---

[2] At the oral argument held on May 17, 2024, the Court initially reserved its decision on Government's Motion VII pending further consideration of the parties' arguments at the hearing and in the briefing. (Tr. at 49–50.) The Court now rules on Motion VII.

[3] Dr. Rotello is Defendant's expert in human memory, eyewitness identification, and memory errors. (ECF No. 144 at 6.)

identification of Defendant. (*Id.* at 30–32.) The Government also claims the testimony would be unduly prejudicial because of its discussion of cross-racial identification, which may improperly prejudice the jury regarding the officer's testimony without introducing any probative value, since the testimony would still only be based on one interaction. (*Id.* at 32–33.)

Defendant argues Dr. Rotello's testimony will aid the jury in assessing the accuracy of cross-racial identifications in this case, as well as how the commitment effect and confirmation bias may impact multiple identifications. (ECF No. 144 at 7.) Defendant asserts Dr. Rotello's testimony is particularly important given that no photos or videos exist of any of the alleged drug transactions. (*Id.* at 7–8.) Defendant also states that Dr. Rotello will testify on the reliability of a witness's in-court identification of a defendant should such an identification occur in this case. (*Id.* at 8–9.)

The Court finds Dr. Rotello's testimony is relevant to the case, as the undercover officer is identifying Defendant based in part on his recollection, albeit a recollection informed by approximately seventeen in-person interactions. (ECF No. 136 at 31.) Rule 702 also has a relatively liberal admissibility standard, meaning Dr. Rotello's testimony is admissible based on that rule's requirements. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) ("Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." (quoting *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997))); *Meadows v. Anchor Longwall and Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) (noting the standard for relevance under Rule 702 "is not high" and "met when there is a clear 'fit' connecting the issue in the case with the expert's opinion that will aid the jury in determining an issue in the case" (quoting *Lauria v. Amtrak*, 145 F.3d 593, 600 (3d Cir. 1998))); *United States v. Mathis*, 264 F.3d 321, 338 (3d Cir. 2001) (holding expert testimony regarding officer's potential focus on weapon during

encounter with Defendant used to ground eyewitness identification was relevant under Rule 702, as although the weapon was not pointed at the identifying officer, the expert's testimony regarding the officer's potential focus on the weapon was still potentially relevant due to the officer's potential shock at seeing the weapon). Here, Defendant has indicated that Dr. Rotello will address the potential impact "cross-racial identification," the commitment effect, and confirmation bias may have on the reliability of all the undercover officer's identifications of Defendant. (ECF No. 144 at 6–9.) Such testimony is relevant to the accuracy of the undercover officer's identification of Defendant. Indeed, even challenging just one of the undercover officer's identifications of Defendant does serve to partially undermine the basis of the officer's other identifications of Defendant, albeit in a limited manner.

However, in some cases, the probativeness of Dr. Rotello's potential testimony is substantially outweighed by the potential prejudice and confusion which may be caused, such that this testimony should be excluded under Federal Rule of Evidence 403. Rule 403 allows the Court to exclude testimony when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Here, Dr. Rotello's potential testimony is likely to substantially confuse the jury where it raises considerations more appropriately directed to eyewitness identifications based on a single encounter, such as "the presence of a hat, opportunity to view, duration of exposure, viewing angle" and "event stress." (ECF No. 144 at 7.) The introduction of such issues into the trial, while tangentially related to the identifications of the undercover officer, would be substantially more confusing and prejudicial than probative, particularly given the numerous encounters between the undercover officer and the Defendant, as well as other corroborating identification evidence, such as phone recordings. (ECF

No. 136 at 31–32); *see CareDx, Inc. v. Natera, Inc.*, Civ. A. No. 19-662, 2021 WL 1840646, at *2 (D. Del. May 7, 2021) ("Even if expert testimony meets the requirements of Rule 702, there is still 'some room for Rule 403 to operate independently.'" (quoting *Paoli*, 35 F.3d at 746)); *United States v. Libutti*, No. 92-611, 1994 WL 774646, at *5 (D.N.J. Feb. 8, 1994) ("Expert testimony which is apt to be fruitless may thus be precluded as tending to waste time or confuse issues at trial under Rule 403."); *United States v. Mills*, No. 17-122, 2019 WL 2464782, at *4 (W.D. Pa. June 13, 2019) (holding that the expert evidence should be excluded under Rule 403 as it would "undoubtedly result in two days of testimony about the various neuropsychological tests and results, and the experts' competing interpretations of same, leading to disputes over confidence intervals, IQ testing methods and other matters which have little to do with this case and would serve only to distract the jurors"); *United States v. Jones*, No. 16-516, 2017 WL 1591855, at *5 (D.N.J. May 1, 2017) (excluding expert testimony regarding wrongful convictions in extrinsic cases in part under Rule 403 as the "minimal probativeness [of the evidence] is substantially outweighed by the prejudicial emotional impact of a wrongful conviction.").

The Court will therefore restrict Dr. Rotello's testimony to issues which are relevant to multiple eyewitness identifications over a period of time and will preclude Dr. Rotello from testifying regarding the spatial and physical characteristics of particular encounters, including issues such as "the presence of a hat, opportunity to view, duration of exposure, viewing angle" and "event stress." (ECF No. 144 at 7.) Dr. Rotello may testify regarding issues applicable to an eyewitness's multiple identifications of an individual, including issues of confirmation bias and commitment effect and the role which cross-racial identification may play in influencing these issues. Dr. Rotello is also permitted to testify on the general reliability of in-court identifications of a defendant. These restrictions balance the relevance of Dr. Rotello's testimony to the accuracy

of the eyewitness identification with the potential confusion caused by allowing testimony regarding the physical and spatial characteristics of the seventeen different eyewitness identifications made. Such restrictions stem from the Court's power to regulate the expert's testimony to help focus the issues and ensure the witness does not stray into impermissible subjects. *See Woods v. Seadrill Americas, Inc.*, Civ. A. No. 16-15405, 2017 WL 8293244, at *3 (E.D. La. Sept. 11, 2017) (forbidding expert witness from testifying "as to the duties of the [d]efendant or the cause of the [p]laintiff's injury," instead limiting expert testimony to "the machinery and setup of the drillship" including "descriptions of that machinery, its purpose and location on the drillship, and any relevant regulation"); *Randolph v. ADT Sec. Servs., Inc.*, Civ. A. No. 09-1790, 2012 WL 4480259, at *3 (D. Md. July 23, 2012) (Restricting expert's testimony "to explaining the process he used to calculate [p]laintiffs' economic loss" and prohibiting expert's testimony on "[p]laintiffs' alleged ability to earn between $50,000 and $100,000 in their positions at ADT" due to a lack of factual support); *Bibbins v. Union Pac. R.R. Co.*, Civ. A. No. 04-223, 2006 WL 6854875, at *2 (M.D. La. Aug. 11, 2006) ("Dr. Cenac will not be permitted to testify to anything other than plaintiff's diagnosis, prognosis, or recommended treatment. Because he is an expert and not a fact witness, he is to make no factual conclusions as to what may have caused plaintiff's alleged diminished mental condition.").

Accordingly, Government's Motion VII is **GRANTED IN PART** and **DENIED IN PART**.[4]

---

[4] The Court notes that its ruling on Government's Motion VII does not preclude Defendant from being able to cross-examine the undercover officer regarding issues related to his identifications of Defendant, to the extent permissible under the Federal Rules of Evidence and within the scope of direct examination.

### Q.     Government's Motion VIII

The Government asks the Court to admit all recorded statements and text messages by Defendant's alleged co-conspirators, "including Louis Perez a/k/a 'E-Rick,' Juan Vargas a/k/a 'Cuzzo,' Johnel Dunlap a/k/a 'Sup,' and Ramon 34 Del Orbe a/k/a 'Gárgula'" as non-hearsay co-conspirator statements, based on future proof of the drug trafficking conspiracy to be presented at trial. (ECF No. 136 at 33–36.)

Courts generally refrain from ruling on the admissibility of entire categories of evidence before the development of the record at trial. *See United States v. Hills*, No. 08-654, 2009 WL 3081721, at *3 (E.D. Pa. Sept. 25, 2009) ("[A]t this juncture the Court is without sufficient information about the specific proposed evidence or the other circumstances surrounding the discovery of the drugs in this case to make a definitive ruling as to this entire category of evidence."); *Tillman v. Walmart, Inc.*, Civ. A. No. 19-12161, 2021 WL 1812881, at *1 (E.D. La. Mar. 22, 2021) ("Much of what Plaintiff seeks are blanket rulings regarding an entire category of evidence. Such requests are routinely denied. More importantly, it is virtually impossible for this Court to consider many of Plaintiff's arguments when they are divorced from a specific exhibit or from specific testimony."); *Miller v. Michael Weinig AG*, Civ. A. No. 20-47, 2023 WL 3098328, at *3 (D. Mont. Apr. 26, 2023) ("The Court will refrain from admitting or excluding these entire categories of evidence until it better understands the specific evidence or testimony [d]efendants seek to introduce and its intended purpose. The Court directs [the plaintiff] to raise specific objections at trial. The Court will consider them as they arise."). Here, the Government has given no indication of what specific co-conspirator statements it wishes to admit at trial and instead appears to be requesting a general ruling from the Court that all such statements are admissible as non-hearsay co-conspirator statements. Currently, the Court does not have a sufficient basis upon

which to make such a general ruling as it does not know which specific co-conspirator statements the Government intends to admit, nor for what purpose(s) the Government intends to admit those statements, nor whether Defendant opposes admitting some or all of those statements.

Accordingly, the Court **RESERVES** decision on Government's Motion VIII until such later time as may be necessary during trial.

### R.    Government's Motion IX

The Government requests the Court preliminarily determine the authentication of certain records, including rulings that records of Defendant's "Judgments of Conviction & Orders for Commitment" ("Judgments of Conviction") from his 2013 and 2014 convictions, as well as business records pertaining to the phone number ending in 1538 and the phone number ending in 3554, are self-authenticating. (ECF No. 136 at 36–39.) The Court will refrain from ruling on the authentication of these documents at this time, as counsel indicated at oral argument that they are meeting and conferring regarding potential stipulations addressing the authenticity of these records. (Tr. at 51–52.)

Accordingly, the Court **RESERVES** decision on Government's Motion IX until such later time as may be necessary during trial.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motions *In Limine* (ECF No. 135) are **GRANTED IN PART**, **DENIED IN PART**, and **RESERVED IN PART**, and the Government's Motions *In Limine* (ECF No. 136) are **GRANTED IN PART, DENIED IN PART**, and **RESERVED IN PART**. An appropriate Order follows.


Date: June 7, 2024                                    */s/ Brian R. Martinotti*
                                                       **HON. BRIAN R. MARTINOTTI**
                                                       **UNITED STATES DISTRICT JUDGE**