<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>KENNETH STRICKLAND,<br><br>Defendant. | Case No. 2:21-cr-00311 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are two post-trial motions: (1) Defendant Kenneth Strickland's ("Defendant") Motion for a Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29; and, alternatively, (2) Defendant's Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33. (ECF Nos. 187, 195.) The United States of America (the "Government") filed a joint Opposition to both of Defendant's Motions. (ECF No. 190.) Having reviewed the submissions filed in connection with Defendant's Motions, for the reasons set forth below and for good cause having been shown, Defendant's Motion for a Judgment of Acquittal and Motion for a New Trial are **DENIED**.

**I.   BACKGROUND**

   **A.   Factual Background**

On January 11, 2024, the Defendant was charged by superseding indictment ("Indictment") with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances (Count 1), and Distribution and Possession with Intent to Distribute Fentanyl (Counts 2–6). (ECF No. 128 at 1–2.) The Indictment is based on events from November 2019 to May 2020. (*Id.*)

The Indictment stems from a law enforcement investigation into a drug trafficking organization ("DTO") operating in New York, New Jersey, and Pennsylvania, among other states. (ECF No. 1 at 3.) Defendant worked for suppliers in the DTO to distribute large quantities of heroin and fentanyl. (*Id.*) Beginning in November 2019, undercover law enforcement officers began making controlled purchases of suspected heroin from Defendant. (ECF No. 88 at 1–2.) Defendant purportedly organized narcotics deliveries between himself and the suppliers using a cell phone, including with supplier Louis Perez ("Perez"). (*Id.* at 2.) On March 30, 2020, the Court granted the Government's application to intercept wire and electronic communications from Defendant's phone. (*Id.*) The Government then intercepted communication exchanges between Defendant and Perez, including a communication on or about April 10, 2020, wherein Perez agreed to sell Defendant narcotics. (*Id.*) The Government eventually surveilled a meeting between Perez and Defendant on April 13, 2020, where Defendant walked with Perez behind a building before walking back to his vehicle and placing something in the trunk. (*Id.* at 2–3.) Defendant was ultimately arrested on July 15, 2020.

B.     **Procedural History**

A criminal complaint was filed against Defendant and others on July 14, 2020. (ECF No. 1.) On the same day, a warrant was issued for Defendant's arrest. (ECF No. 5.) On July 15, 2020, the Court issued an order of detention remanding Defendant to federal custody with the right to make a bail application at a later time. (ECF No. 17.) An indictment was issued on April 14, 2021. (ECF No. 50.) Defendant was arraigned on April 26, 2021, where he pled Not Guilty to all counts in the indictment. (ECF No. 51.) On October 14, 2022, Defendant filed an Omnibus Motion requesting the dismissal of the indictment, evidentiary disclosures by the Government, and the suppression of certain wiretap recordings. (ECF No. 83.) On February 27, 2023, the Court granted

in part, and denied in part, Defendant's Omnibus Motion. (ECF No. 106.) The Court issued a further Opinion on the denial of Defendant's motion to suppress the wiretap evidence on November 28, 2023. (ECF No. 121.) The superseding Indictment was filed on January 11, 2024. (ECF No. 128.)

Defendant was arraigned on January 17, 2024. (ECF No. 129.) Defendant and the Government each filed their respective motions *in limine* on April 2, 2024. (ECF Nos. 135, 136.) The Government filed its Opposition to Defendant's motions *in limine* on April 11, 2024 (ECF No. 138), and Defendant filed his Opposition to the Government's motions *in limine* on April 26, 2024 (ECF No. 144). The Court held oral argument for these motions on May 17, 2024. (ECF Nos. 145, 146.) On June 7, 2024, the Court issued an Opinion on the motions *in limine*, and a final amended Order granting in part, denying in part, and reserving in part the parties' motions *in limine*. (ECF Nos. 149, 150.) On July 15, 2024, the Court held a telephonic status conference with the parties' attorneys. (ECF No. 152.) On July 16, 2024, the Court issued an Opinion and Order granting in part, and denying in part, the Government's motion for sequestration, and Defendant's motion for sequestration. (ECF Nos. 156, 157.)

Jury selection took place from July 17 to July 18, 2024. (ECF Nos. 174, 175.) Trial began on July 18, 2024, and concluded on July 29, 2024. On July 29, 2024, the jury entered a verdict, finding Defendant guilty of Counts One through Six. (ECF No. 183.) Defendant promptly filed his Motions for a Judgment of Acquittal and for a New Trial on August 11, 2024. (ECF No. 187.) The Government filed its Opposition to the Motions on September 13, 2024. (ECF No. 190.) Defendant filed his Reply on October 2, 2024. (ECF No. 195.)

## II. LEGAL STANDARD

### A. Rule 29 Motion

In a Rule 29 motion for a judgment of acquittal, the defendant bears "a very heavy burden." *United States v. Petway*, Crim. No. 17-534 (KM), 2022 WL 3152624, at *1 (D.N.J. Aug. 8, 2022) (quoting *United States v. Anderson*, 108 F.3d 478, 481 (3d Cir. 1997)). The Court must be vigilant "not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). The evidence is to be viewed in the light most favorable to the prosecution, *United States v. Hart*, 273 F.3d 363, 371 (3d Cir. 2001), and the Government is to receive the benefit of all inferences and credibility determinations. *Petway*, 2022 WL 3152624, at *1; *United States v. Hubbard*, No. 20-507, 2023 WL 5035303, at *1 (D.N.J. Aug. 7, 2023). Ultimately, the Court must deny a Rule 29 motion if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hubbard*, 2023 WL 5035303, at *1 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also United States v. Fattah*, 914 F.3d 112, 183 (3d Cir. 2019) (finding a Rule 29 motion must be denied if a "reasonable juror could accept the evidence as sufficient to support the defendant's guilt beyond a reasonable doubt").

### B. Rule 33 Motion

Federal Rule of Criminal Procedure 33(a) permits a court, on a defendant's motion, to "vacate any judgment and grant a new trial if the interest of justice so requires." A court may order a new trial if it "believes that the jury verdict is contrary to the weight of the evidence," but only if "there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted." *United States v. Silveus*, 542 F.3d 993, 1004–05 (3d Cir. 2008)

4

(quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). Courts grant these motions "sparingly and only in exceptional cases." *Id.* at 1005 (quoting *Gov't of the V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987)). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *Id.* at 1004 (quoting *Johnson*, 302 F.3d at 150).

A court may grant "[a] Rule 33 motion . . . based on an alleged error or combination of errors at trial." *United States v. Brown*, Crim. No. 22-108 (KM), 2022 WL 16855129, at *2 (D.N.J. Nov. 10, 2022). "A new trial is required on this ground only when 'the[] errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'" *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (alteration in original) (quoting *United States v. Hill*, 976 F.2d 132, 145 (3d Cir. 1992)). "Thus, a defendant must show '(1) that error occurred at trial, and (2) that error had a substantial influence on the verdict.'" *United States v. Reyes*, Crim No. 21-401 (RMB), 2024 WL 4404069, at *5 (D.N.J. Oct. 4, 2024) (quoting *United States v. Amirnazmi*, 648 F. Supp. 2d 718, 720 (E.D. Pa. 2009), *aff'd*, 645 F.3d 564 (3d Cir. 2011)). Courts evaluate any "alleged errors in the context of the strength of the evidence of guilt, the scope of the objectionable conduct in relation to the entire proceeding, and the ameliorative effect of any curative instruction." *Brown*, 2022 WL 16855129, at *2.

### III. DECISION

#### A. Motion for a Judgment of Acquittal

In this case, Defendant was charged with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances (Count 1) and Distribution and Possession with Intent to

Distribute Fentanyl (Counts 2–6). (ECF No. 128 at 1–2.) Here, Defendant challenges the sufficiency of the evidence as relates to identity and the chain of custody.

### 1. Count I (Conspiracy)

Defendant argues testimony from the Government's cooperating witness, Louis Perez (the narcotics broker for the DTO), highlights Defendant was not part of the conspiracy, but rather, Defendant was a "mere customer or buyer of Perez's, if anything." (ECF No. 187 at 2.) Defendant contends the Government's evidence via Perez's testimony does not establish beyond a reasonable doubt that Strickland was a member of the DTO. (*Id*. at 2–4.) The Government contends the evidence presented was sufficient to support a guilty verdict on Count I, noting that Perez's testimony, testimony from other witnesses including Johnel Dunlap, expert testimony, surveillance videos, and recorded phone calls overwhelmingly proved Defendant joined and participated in the DTO. (ECF No. 190 at 7–12.) The Court agrees.

The Court finds the Government presented sufficient evidence to survive a Rule 29 motion, as multiple witnesses have identified the Defendant in court based on repeated interactions with Defendant and have shown an accurate memory of his physical characteristics. Witnesses such as Detective John Cooney and Louis Perez made in-court identifications of Defendant based on multiple in-person interactions, including 16 in-person interactions in the case of Detective Cooney and 3-5 interactions in the case of Perez. (Tr.[1] 88:20–22; 516:4–13.) Both witnesses distinguished Defendant from other individuals they had met based on Defendant's physical characteristics, such as height, and certain geographic characteristics, such as locations of meeting places with Defendant. (*Id*. at 516:22–517:16; 614:12–21.) The Government also introduced evidence linking

---

[1] "Tr." refers to the trial transcript from the jury trial of Defendant Kenneth Strickland, 2:21-cr-00311-BRM, beginning July 18, 2024, and concluding on July 29, 2024. (ECF Nos. 167, 168, 176, 177, 178, 185, 186.)

6

Defendant to certain "burner" cell phones and regarding Defendant's address. (*See generally id*. at 333:9–359:9.) The Government used phone calls and text messages to confirm his interactions with various witnesses. (*Id*. at 183:20–24.) The Government therefore presented sufficient evidence on the identity issue for a reasonable trier of fact to find Defendant was the person who committed the charged offenses. *See United States v. Porter*, Case No. 21-CR-87, 2023 WL 4683482, at *3 (N.D. Ill. July 21, 2023) (finding prosecution had presented sufficient identity evidence to connect defendant with bank robberies, despite lack of in-court identifications, to survive Rule 29 motion as eyewitness descriptions matched the defendant's "height, weight, and age" and because certain types of money were found on defendant, along with clothes matching the robber's description); *United States v. Chavez*, 3:18-cr-311-MOC, 2021 WL 5855644, at *2–3 (W.D.N.C. Dec. 9, 2021) (finding prosecution presented sufficient identity evidence to survive Rule 29 motion based in part on evidence linking defendant to P.O. box and bank account containing and laundering proceeds of "criminal telemarketing sweepstakes conspiracy" as well as witness identification of defendant using defendant's Facebook page); *United States v. Gaines*, 815 F. App'x 709, 713 (4th Cir. 2020) (finding identity evidence sufficient to support defendant's conviction based in part on witness describing physical characteristics of defendant, and evidence of defendant driving robbery vehicle twenty minutes after it was stolen).

### 2. Counts Two through Six (Distribution)

Defendant argues he should be acquitted based on the insufficiency of the Government's chain of custody evidence concerning Counts Two through Six. (ECF No. 187 at 4–7; ECF No. 195 at 6–9.) Defendant asserts there is reasonable doubt the narcotics introduced at trial were the same narcotics sold by Defendant. (ECF No. 187 at 4.) Defendant cites to the fact no pictures were taken of the drug transactions or the drugs purchased. (*Id*. at 5.)

The Court finds the Government presented sufficient evidence regarding the chain of custody for the trier of fact to convict Defendant, as the law enforcement witnesses all testified standard procedure was followed for the evidence collected. After extensive direct and cross examination on the chain of custody for the drug evidence, all law enforcement witnesses involved in the chain of custody testified that standard procedures were followed in the preservation and transfer of the evidence. (Tr. 857:11–22.) The Court was satisfied from this testimony as to the authenticity of the evidence and accordingly admitted it for jury consideration. (*Id*. at 857:23–25.)

To the extent Defendant raises minor chain of custody issues, such as scrivener's errors in recordkeeping, such minor errors cannot ground a Rule 29 motion. *See Hubbard*, 2023 WL 5035303, at *3 (holding police officer's failure to update evidence log when transporting swabs to evidence vault was insufficient to ground Rule 29 motion, as "[t]hat record keeping defect, however, was honestly presented to the jury, who could use it to assess the witnesses' credibility. Defense counsel used it in his summation to argue that the DNA results were unreliable. The jury nevertheless apparently found the chain-of-custody testimony credible, as they were entitled to do."); *cf. United States v. Williams*, Case No. 18-cr-149-1, 2022 WL 1136573, at *7 (N.D. Ill. Apr. 18, 2022) ("'A chain of custody need not be perfect.' Instead, the government must show that it took reasonable precautions to preserve the condition of the evidence, which was done here." (quoting *United States v. Godinez*, 7 F.4th 628, 636 (7th Cir. 2021))); *United States v. Whitehead*, No. 22 Crim. 692 (LGS), 2024 WL 3085019, at *9 (S.D.N.Y. June 21, 2024) (declining to hold new trial under Rule 33 based on alleged chain of custody issues because a special agent "testified that he was 'completely confident' the voices on the recordings are Mr. Belmonte and Defendant and that the images in the videos are Mr. Belmonte and Defendant, based on his personal experiences with both parties in relation to this case.").

Accordingly, Defendant's Motion for a Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 is **DENIED**.

### B. Motion for a New Trial

Defendant asserts the Court should order a new trial for five reasons: (1) the Court erred in removing language from the Third Circuit's model jury instruction indicating the Government was required to establish chain of custody for the drugs beyond a reasonable doubt; (2) the Court erred in granting the Government an additional peremptory challenge when it struck Juror No. 62 for cause; (3) the Court erred in denying Defendant's request to dismiss Juror No. 3 after he admitted to sleeping during initial instructions and opening statements; (4) the Court erred by limiting the scope of Dr. Caren Rotello's expert testimony, which effectively prevented Defendant from challenging Detective Cooney's identification of Defendant; and (5) the Court erred by admitting calls into evidence in bulk rather than on a call-by-call basis. (ECF No. 187 at 8–9.) Defendant's arguments are unconvincing.

#### 1. Jury Instructions

Beginning with the jury instructions, the Court finds there was no error, and the jury was properly instructed as to the Government's burden of establishing chain of custody for the drugs. Defendant contends the Court erred by removing language from the jury instruction indicating the Government was required to establish the chain of custody for the drugs beyond a reasonable doubt. (ECF No. 187 at 8.) The Government counters "[t]he jury instructions given by the Court repeatedly stated that the Government bore the burden at all times of proving 'beyond a reasonable doubt' 'each and every element'" of Count One and Counts Two through Six. (ECF No. 190 at 17–18.) The Court agrees with the Government.

"When reviewing reasonable doubt instructions, [the Court] cannot simply evaluate portions of the charge, but instead must consider the reasonable doubt instruction in its entirety." *Vandever v. Att'y Gen. for State of N.J.*, Civil Action No. 04–0877 (WGB), 2006 WL 1541035, at *14 (D.N.J. June 2, 2006) (considering jury instructions regarding the State's burden of proof concerning accomplice liability); *see also State v. Medina*, 147 N.J. 43, 51–52 (1996) (finding, in a case addressing the definition of reasonable doubt, although some parts of the charge were incorrect, it was clear the charge did not violate defendant's due process rights when read in its entirety).

In instructing the jury, the Court reminded the jurors thirty-two times that the Government must prove "each element of the offenses beyond a reasonable doubt." (Tr. 970:19–1008:24.)[2] The Court specifically instructed the jury as to Count One and Counts Two through Six, reminding the jury the Government must prove Defendant's guilt "beyond a reasonable doubt" as to each element of each offense. (*See generally id.* at 993:17–1005:12.) The Court further explicitly told the jury it "may consider any defects in determining the authenticity of [chain of custody] evidence and what weight to give it." (*Id.* at 1007:9–13.) Although the Court did not specifically use the phrase

---

[2] *See, e.g.,* Tr. at 981:7–9 ("The presumption of innocence requires that you find a defendant not guilty unless you are satisfied the Government has proven guilt beyond a reasonable doubt."); *Id.* at 981:16–20 ("In order for you to find the Defendant guilty of the offenses charged, the Government must convince you that the Defendant is guilty beyond a reasonable doubt. That means the Government must prove each and every element of the offenses charged beyond a reasonable doubt."); *Id.* at 982:9–13 ("If, having now heard all the evidence, you are convinced the Government proved each and every element of an offense charged against the Defendant beyond a reasonable doubt, then you should return a verdict of guilty for that offense."); *Id.* at 985:11–15 ("You must separately consider the evidence that relates to each offense, and you must return a separate verdict for each offense. For each offense charged, you must decide whether the Government has proved beyond a reasonable doubt that the Defendant is guilty of that particular offense."); *Id.* at 988:22–25 (emphasis added) ("Your concern . . . is to determine *whether or not the evidence admitted in this trial proves the Defendant's guilt beyond a reasonable doubt*."); *Id.* at 1008:6–9 ("To find the Defendant not guilty, every one of you must agree that the Government has failed to convince you beyond a reasonable doubt with respect to that particular count.").

"beyond a reasonable doubt" in this sentence, Defendant's requested instruction was substantially covered by the instructions given elsewhere. Moreover, this Court already found the jury instruction was "replete with [the] Government's burden." (*Id*. at 964:18–20.) The Court emphasized Defendant was presumed innocent (*id*. at 981:1), the jury should give him the benefit of a reasonable doubt (*id*. at 981:7–12), the jury should consider all evidence (*id*. at 973:5–974:9), and the Government's burden was to prove guilt beyond a reasonable doubt (*id*. at 982:9–13). There was no error, as the Court's jury instructions sufficiently instructed the jury as to the Government's burden of proof.

### 2.     Striking of Juror No. 62

Next, Defendant contends the Court erred by effectively granting the Government an additional peremptory challenge when it struck Juror No. 62 for cause. (ECF No. 187 at 8.) The Court again finds this argument meritless, as the Court took careful steps to ensure a fair and impartial jury.

"Jury selection . . . is 'particularly within the province of the trial judge.'" *Skilling v. United States*, 561 U.S. 358, 386 (2010) (quoting *Ristaino v. Ross*, 424 U.S. 589, 594–95 (1976)). "[D]istrict courts have been awarded ample discretion in determining how best to conduct the voir dire." *Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 153 (3d Cir. 1995) (quoting *Waldorf v. Shuta*, 3 F.3d 705, 710 (3d Cir. 1993)). "The trial judge has the advantage of observing the juror's conduct and the ability to evaluate the juror's answers during voir dire, thus the trial judge is afforded ample discretion as to whether the juror should be excused for cause." *Andujar v. Gen. Nutrition Corp.*, Civil No. 14–7696(JS), 2018 WL 1087494, at *15 (D.N.J. Feb. 28, 2018) (citing *United States v. Calabrese*, 942 F.2d 218, 227 (3d Cir. 1991)); *see also Skilling,* 561 U.S. at 386 (noting a trial judge considers a host of factors, such as "the prospective juror's inflection, sincerity, demeanor,

11

candor, body language, and apprehension of duty"). In determining whether a prospective juror should be excused for cause, the Court's inquiry should focus on whether the potential juror "holds a particular belief or opinion that 'will prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Kirk*, 61 F.3d at 153 (quoting *United States v. Salamone*, 800 F.2d 1216, 1226 (3d Cir. 1986)).

[redacted]

---

[3] "Jury Selection Tr." refers to the transcript from the jury selection prior to the trial of Defendant Kenneth Strickland, 2:21-cr-00311-BRM, which occurred on July 17, 2024 and July 18, 2024. (ECF Nos. 174, 175.)



[(*Id*. at 302:3–13.)]

Defendant's contentions are not supported by the record. The Court conducted ample voir dire of Juror No. 62, █████████████████████████████████████ ████████████ Juror No. 62 stated he thought or believed he could be impartial, ████ █████████████████████████████████ (*Id*. at 294:21–23; 295:2; 295:21–25; 297:12–15.) However, the Court was not persuaded by Juror No. 62's tepid responses during voir dire that he could serve impartially, and thus the Court correctly exercised its discretion to strike Juror No. 62 for cause. *See Kirk*, 61 F.3d at 153 ("A juror is impartial if he or she can lay aside any previously formed 'impression or opinion as to the merits of the case' and can 'render a verdict based on the evidence presented in court.'" (quoting *United States v. Polan*, 970 F.2d 1280, 1284 (3d Cir. 1992))).

### 3. Request to Dismiss Juror No. 3

Defendant also contends a new trial is required because "[t]he Court denied the defense's request to dismiss Juror No. 3 after he admitted to sleeping during initial instructions and opening

13

statements." (ECF No. 187 at 8–9.) The Government maintains the Court did not err by not dismissing Juror No. 3, and, regardless, the Court's decision not to dismiss Juror No. 3 had no bearing on the fundamental fairness of Defendant's trial. (ECF No. 190 at 21–22.)

"Sleeping is a form of jury misconduct, and a defendant must demonstrate both that the juror in question ignored an essential portion of the trial and that the defendant was prejudiced by the juror's misconduct." *United States v. Sheika*, No. CRIM. 05-67 WGB, 2005 WL 2562969, at *4 (D.N.J. Oct. 7, 2005), *aff'd*, 304 F. App'x 135 (3d Cir. 2008) (citations omitted). A sleeping juror should be removed if the sleep has made it "impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial." *Gaston v. MacFarland*, No. Civ.A. 04–1168 (KSH), 2005 WL 1828660, at *7 (D.N.J. July 29, 2005) (quoting *United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000)). However, "courts are not automatically required to remove a sleeping juror; instead they have a considerable amount of discretion in determining how to handle the situation." *Gaston*, 2005 WL 1828660, at *7 (citing *Freitag*, 230 F.3d at 1023).

Defendant has made no showing he suffered any prejudice because of Juror No. 3's brief nap. The Court promptly questioned Juror No. 3 the following day, and Juror No. 3 confirmed he was able to absorb what happened the prior day, and that he was "comfortable" he heard everything that was said. (Tr. at 49:2–12.) The Court noted it had not observed Juror No. 3 sleeping the previous day but promised the parties it would "keep an eye on him" and encouraged counsel to alert the Court if they noticed any juror appearing to be asleep.[4] (*Id*. at 50:1–10.) To be sure, Juror

---

[4] The Court continued to intentionally observe the jurors—particularly Juror No. 3—after engaging in this colloquy with Juror No. 3. (*See* Tr. 119:8–15 ("I have been purposely and continuously observing the jurors, and specifically Juror No. 3. They seem engaged, they seem awake, they seem alert, they seem responsive. They are following the lawyers walking around the courtroom. So I just thank counsel for bringing that to the Court's attention, but it appears that whatever issue occurred yesterday has been alleviated so far.").)

No. 3 admitted he was "[f]alling asleep," but there is no record of how long he was allegedly asleep or during which portions of the opening instruction(s) and/or statement(s). (*Id*. at 48:22–49:1.) See *United States v. De Peri*, 778 F.2d 963, 978 (3d Cir. 1985) ("The opening statement is not evidence in itself, but serves 'to give the jury the broad outlines of the case to enable the jury to comprehend it.'" (quoting *Gov't of the V.I. v. Turner*, 409 F.2d 102, 103 (3d Cir. 1969)).

Even assuming the juror was sleeping, Defendant was not prejudiced by this fact, nor was he denied a fair trial. *See Gaston*, 2005 WL 1828660, at *7 ("A defendant's general assertion that jurors slept through parts of the critical presentation of the defendant[']s evidence and cross examination are too vague to establish prejudice." (internal quotation marks and citation omitted)); *see also United States v. Ortiz*, No. Crim. A. 92-0592, 1993 WL 303286, at *2 (E.D. Pa. Aug. 5, 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994) ("Generally, courts have been reluctant to reverse a conviction or grant a new trial when it has been alleged that jurors have slept during portions of the trial."). Defendant has not alleged how Juror No. 3's dozing supposedly prejudiced him. No evidence was introduced during any of the opening instructions or arguments, and the Court reinstructed the jury prior to closing arguments. Defendant has not demonstrated how the Court's failure to dismiss Juror No. 3 has prejudiced him, and thus a new trial is not warranted.

**4.     Exclusion of Expert Testimony**

Defendant contends the Court erred in restricting the testimony of Dr. Caren Rotello, an expert in human memory, eyewitness identification, and memory errors. (ECF No. 187 at 9; ECF No. 195 at 12–14.) This issue was initially brought to the Court's attention via the Government's motion *in limine* to preclude Dr. Rotello's testimony due to its lack of relevance and potential to unfairly prejudice the jury against the Government's case. (ECF No. 136 at 25–33.) The Court granted in part and denied in part the Government's motion. (ECF No. 148.) Dr. Rotello was

permitted to testify regarding issues relevant to multiple eyewitness identifications over a period but was precluded from testifying regarding the spatial and physical characteristics of particular encounters. (ECF No. 149 at 25.) Defendant contends this was done in error because the "ruling deprived [Defendant] of the ability to defend himself by challenging Det. Cooney's identification of him as the suspect." (ECF No. 187 at 9.) The Court again finds there has been no error.

It is well-established that "a district judge has a 'general "gatekeeping" obligation' with respect to all testimony based on specialized knowledge of some form." *United States v. Williams*, 974 F.3d 320, 358 (3d Cir. 2020) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). Under Federal Rule of Evidence 702, a district judge must ensure "such testimony is both reliable and relevant, including under the standard laid down in Rule 403," *id*. (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594–95 (1993)), which permits the exclusion of relevant evidence if its probative value is substantially outweighed by the risk of unfair prejudice, confusing issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence, *see* Fed. R. of Evid. 403.

In ruling on the Government's motion *in limine*, the Court found Dr. Rotello's proposed testimony would be relevant; however, the probativeness of Dr. Rotello's potential testimony was substantially outweighed by the potential prejudice and confusion that could be caused. (ECF No. 149 at 24.) This Court held Dr. Rotello's potential testimony was "likely to substantially confuse the jury where it raises considerations more appropriately directed to eyewitness identifications based on a single encounter." (*Id*.) The Court believed the introduction of such issues would be confusing to the jury, given the numerous encounters between Detective Cooney and Defendant. (*Id.*) Consequently, this Court restricted Dr. Rotello's testimony to issues relevant to multiple eyewitness identifications over a period of time, including issues of confirmation bias and

commitment effect and the role cross-racial identification may play in influencing these issues. (*Id*. at 24–26.) Accordingly, a motion for a new trial on this ground is not warranted.

### 5. Admitting Phone Calls into Evidence

Finally, Defendant argues the Court erred in admitting jail calls into evidence in bulk rather than on a call-by-call basis. (ECF No. 187 at 9; ECF No. 195 at 14–16.) During trial, the Government moved to introduce certain discs—including their audio contents—into evidence. (ECF No. 187 at 9; ECF No. 190 at 24.) The Government notes this was first done without objection by Defendant. (ECF No. 190 at 24.) The Government further contends it provided "Defendant with a transcript for every audio clip on the Government's exhibit list more than three months prior to trial." (*Id*.) Despite making these transcripts available to Defendant to review, the Government asserts there is no obligation to introduce exhibits one-by-one at trial. (*Id*. at 25.)

In fact, Defendant cites no case law for the assertion that the Court erred by allowing the admission into evidence of audio recordings of phone calls in bulk "rather than piecemeal introduction." (ECF No. 195 at 14.) *But see United States v. Evans*, 572 F.2d 455, 490 (5th Cir.), *cert. denied*, 439 U.S. 870 (1978) (finding no error when "the district court admitted [a] long series of exhibits together, [when] it was . . . done with the provision that any specific objection which defense counsel desired to raise at a later time regarding a particular exhibit would be entertained"). When the Government moved to admit Exhibits 800 through 843, the Court specifically asked defense counsel if it had any objections. Counsel stated: "Your Honor, *we don't object to it being entered into evidence*. We do object to the idea that it's calls with Kenneth Strickland. We do not believe that has been established yet." (Tr. at 62:19–63:1 (emphasis added).) Defendant notes he "had stipulated to the authenticity of the calls as evidence but specifically preserved . . . the ability to object to admissibility on other grounds." (ECF No. 195 at 15.)

17

Defendant took advantage of this preservation by later objecting to the admission of the exhibits, which the Court overruled. (*Id*. at 825:22–833:9.) The Court considered Defendant's objection by inviting counsel to the bench for a sidebar and hearing out both parties. (*Id*. at 825:22–833:9.) During this sidebar, the Government noted it had provided Defendant with transcripts of the subject calls at least three months prior to trial. (*Id*. at 828:22–829:1.) The Government further offered to discuss redactions to the phone calls. (*Id*. at 829:24–830:1.) The Court ultimately overruled Defendant's objection. (*Id*. at 833:2–8.) Defendant was not deprived of his opportunity to object to the introduction of this testimony, and thus, the Court did not err by admitting the phone calls into evidence.[5]

Moreover, Defendant has failed to identify how this supposed error prejudiced him in any way. *See Reyes*, 2024 WL 4404069, at *5 (explaining that in bringing a Rule 33 motion, a defendant must demonstrate error and how that error had a substantial influence on the verdict). Defendant does not identify a single phone call he purports was incorrectly admitted into evidence nor any instance of prejudice resulting from the admission. Rather than identify how he was prejudiced by the calls, Defendant now objects to the bulk admission of these exhibits on the theory that he could have objected to some statement that might have been elicited on cross examination. (ECF No. 187 at 9.) But a hypothetical objection to hypothetical statements does not meet Defendant's burden to show an error that had a "substantial influence on the outcome of the trial."

---

[5] To the extent Defendant argues that allowing the phone calls into evidence is a violation of the Court's *in limine* Order (ECF No. 150), the Court finds this to be unfounded. The Order requires that the "Government authenticate the identity of participants in phone calls *before such calls are played before the jury*." (ECF No. 150 (emphasis added).) Defendant himself states the "calls . . . were not played during trial." (ECF No. 187 at 9.) It is unclear how Defendant finds this Order to have been "obviated" by the admission of this evidence.

18

*Thornton*, 1 F.3d at 156. Considering all other evidence presented, Defendant's hypothetical error would not have impacted the jury's verdict, and thus a new trial on this ground is not warranted.

Accordingly, Defendant's Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33 is **DENIED**.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for a Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 and, alternatively, Defendant's Motion for a New Trial pursuant to Federal Rule of Criminal Procedure 33 are **DENIED**. An appropriate order follows.

**Date: November 7, 2024**                    */s/ Brian R. Martinotti*
                                                            **HON. BRIAN R. MARTINOTTI**
                                                            UNITED STATES DISTRICT JUDGE